MATTER OF CORDERO-SANTANA

In Deportation Proceedings

A-12618549

*Decided by Board February 13, 1967*

Notwithstanding respondent, who is deportable on a charge of visa fraud and misrepresentation, is also deportable on documentary charges of "no visa" and "no passport", he is not precluded by such documentary charges from establishing he was "otherwise admissible" for the purposes of a waiver of the grounds of deportation under section 241(f) of the Immigration and Nationality Act, as amended, since any ground of deportation (regardless of the section of statute under which brought) which results directly from the visa fraud or misrepresentation is encompassed within the purview of section 241(f) of the Act, provided the alien has the requisite relationship to a United States citizen or resident alien.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—Visa procured by fraud or misrepresentation.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—No passport.

Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—No valid immigrant visa.

ON BEHALF OF SERVICE: Irving A. Appleman
Appellate Trial Attorney

Stephen M. Suffin
Trial Attorney
(Brief filed)

The case comes forward on appeal by the Service from the order of the special inquiry officer dated June 3, 1965 terminating the proceedings.

The respondent is a native and citizen of Mexico, 43 years old, male, who was admitted to the United States for permanent residence on July 4, 1961 on the basis of a nonquota immigrant visa issued to him on July 3, 1961 at the American Consulate General at Tijuana, B.C., Mexico on July 3, 1961, as a native of the western hemisphere. A Mex-

ican passport was not required under the State Deparment regulations because he had been married to a United States citizen, Neomia Tarkington, on March 7, 1960.

However, the record establishes that the respondent had previously been married on October 28, 1943 to Maria Isabel Marcado-Garcia at Sayula, Jalisco, Mexico and that four children were born of this marriage. He resided with Maria from 1942 until he entered this country as an agricultural laborer in 1952, did not live with her thereafter but continued to support their children. On November 18, 1964 his marriage to Maria was terminated by divorce and he remarried Neomia on May 21, 1965.

In his application for the immigrant visa executed before the American Vice Consul on July 3, 1961, the respondent stated that he was married only once, that his wife's name was Neomia and that he had no children. Although the respondent was by birth nonquota, these false statements are regarded as material inasmuch as at the very least the misrepresentations choked off a relevant line of inquiry which might have resulted in a proper determination of excludability since it would have led to the discovery of adultery and bigamy and desertion of the first wife.[1] The charge of excludability based upon the visa procured by fraud or misrepresentation is sustained.

The special inquiry officer has terminated proceedings on the theory that the second charge contained in the order to show cause and the lodged charge, which are documentary charges, all arose out of the same fraud or misrepresentation. The special inquiry officer applied section 241(f) of the Immigration and Nationality Act which provides:

> The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

The special inquiry officer concluded that on the basis of his present marriage to a United States citizen he comes within the ameliorating provisions of section 241(f) of the Immigration and Nationality Act, as amended, that the waiver in that section also covers other deportation grounds flowing directly from the fraud or misrepresentation, and terminated proceedings upon the basis of the 241(f) waiver.

Consideration of the case on appeal was held in abeyance pending the outcome of the appeal to the Supreme Court in *Errico* v. *Immigration*

---

[1] *Matter of S— and B—C—*, 9 I. & N. Dec. 436 (A.G., 1961).

*and Naturalization Service* (9th Circuit) and *Scott v. Immigration and Naturalization Service* (2d Circuit) which reached diametrically opposed conclusions on the meaning of the term "otherwise admissible alien" contained in section 241(f) of the Immigration and Nationality Act. The Supreme Court decision was handed down December 12, 1966 and is reported in 385 U.S. 214.

At the outset the Supreme Court noted that even the Government agrees that section 241(f) cannot be applied with strict literalness. Under the literal interpretation which would involve a violation of section 212(a)(19) of the statute, an alien who entered by fraud could be deported for having entered with a defective visa or other documentary irregularities even if he would have been admissible if he had not committed the fraud. Such an interpretation would be admittedly inconsistent with the manifest purpose of the section and the administrative authorities have consistently held that *section 241(f) waives any deportation charge that results directly from the misrepresentation regardless of the section of the statute under which the charge was brought,* provided that the alien was "otherwise admissible at the time of entry."

The Court traced the parent comparable legislation, namely, the Displaced Persons Act of 1948 and section 7 of the 1957 Act. The Court held that the language contained in the 1957 Act would be meaningless if an alien who committed fraud for the purpose of evading quota restrictions would have been deportable as "not otherwise admissible at time of entry." Congress must have felt that aliens who evaded quota restrictions by fraud would be "otherwise admissible at time of entry" or it would not have found it necessary to provide further that, in the case of an alien not possessing a close familial relationship to a United States citizen or lawful permanent resident, the fraud must not be for the purpose of evading quota restrictions. The Court felt its conclusion was reinforced by the fact that Congress further specified that the aliens who were not close relatives of United States citizens must establish that their fraud was not committed for the purpose of evading an investigation. The Court concluded that elementary principles of statutory construction led to the conclusion that Congress meant to specify two specific types of fraud that would leave an alien "otherwise admissible" but that it would nonetheless bar relief to those aliens who could not claim relationship with a United States citizen or alien lawfully admitted for permanent residence, *i.e.,* fraud to evade quota restrictions and fraud to avoid investigation.

The Court went on to state that the construction of the statute that it adopted in these cases was further reinforced when the section was regarded in the context of the 1957 Act. The fundamental purpose

of this legislation was to unite families. The Act principally granted relief to persons who would be temporarily or permanently separated from their nearest relatives and the strict requirements of the Immigration and Nationality Act, including the national quotas, were not relaxed for them. It was wholly consistent with this purpose for Congress to provide that immigrants who gained admission by misrepresentation, perhaps many year ago, should not be deported because their country's quota was oversubscribed when they entered if the effect of deportation would be to separate a family composed in part of an American or a lawfully permanent resident. The Court went on to say that any doubts, even in a deportation statute, should be resolved in favor of the alien and concluded that to give meaning to the statute in the light of its humanitarian purpose of preventing the breaking up of families composed in part at least of American citizens, the conflict between the Circuits must be resolved in favor of the aliens, affirmed the *Errico* decision and reversed the *Scott* decision.

In the instant case the documentary charges flow from and are a direct result of the fraud charged in the order to show cause.[2] The Supreme Court in *Errico*, etc., has held that section 241(f) waives any deportation charge that results directly from the misrepresentation regardless of the section of the statute under which the charge was brought provided that the alien was "otherwise admissible at time of entry." The Court emphasized that in the case of persons possessing the necessary familial ties, and having in mind that the fundamental purpose of the legislation was to unite families and to give meaning to the statute in the light of its humanitarian purpose of preventing the breakup of families composed in part at least of American citizens, immigrants who gained admission by misrepresentation should not be deported because their quota was oversubscribed. The Court held that the documentary charges relating to the fraud, in the light of the humanitarian purpose of the statute and its historical background, should be waived. The Supreme Court decision confirms that the proceedings were properly terminated by the special inquiry officer.

ORDER: It is ordered that the appeal of the Service from the decision of the special inquiry officer terminating the proceedings be and the same is hereby dismissed.

---

[2] Where a no passport charge is linked to a no visa charge by a common ground of misrepresentation and the no visa charge is not sustained, the no passport charge also falls. *Matter of Box*, 10 I. & N. Dec. 87.